BANK OF COMMERCE & TRUST CO., Admr., etc., v. H. W. NORTH et al.

Western Section. December 6, 1929.

Petition for Certiorari denied by Supreme Court, July 19, 1930.

520

Wilson, Gates & Armstrong, of Memphis, for appellant.

Chandler, Shepherd & Owen and C. H. Williams, of Memphis, for appellee.

SENTER, J. The complainant, Bank of Commerce & Trust Company, as administrator of the estate of J. B. Hurt, deceased, filed the original bill in this cause against the defendants, H. W. North, F. R. Christian, and H. F. Parker, as the surviving partners of a co-partnership operating a cotton business in the City of Memphis under the firm name of J. B. Hurt & Company. The bill seeks to have an accounting of the co-partnership between the administrator of the deceased, Hurt, and the surviving partners, and the interest and rights in the co-partnership assets belonging to the estate of the deceased, Hurt, ascertained by the accounting, and declared, and a recovery of the same by the administrator of said estate.

The defendant, F. R. Christian, filed a separate answer to the original bill, and also to the cross-bill filed by North. However, since there is now no issue on this appeal involving Christian, we deem it unnecessary to make any further reference to his answers to the original and cross-bills.

Parker is shown to be a nonresident of the State, and the bill was subsequently dismissed to him.

The defendant, North, filed an answer and made his answer a cross-bill to the original bill, and in which he relied upon the provisions of the limited partnership contract entered into between the parties, and by the terms of which North was made a special limited partner. He admits the allegations in the bill, substantially as to the amounts of contributions by the respective parties. By his cross-bill he contends that he was entitled to all of the remaining assets of the firm, remaining after the partnership was liquidated and the debts paid, following the death of Hurt, and in addition was entitled to a judgment against the estate of Hurt, and the other two general partners, Christian and Parker, and that charging against the amount so advanced by him the maximum amount for which he could be held liable, twenty-five per cent of the losses, the balance of the assets to be applied by a decree of the court against the remaining amount of advances and contributions made by him, and after so applying said remaining assets, that he have a decree and judgment against the administrator of Hurt, and against F. R. Christian and H. F. Parker for the balance of the contribution or advance-ment made by him to the business, together with interest thereon.

There is contained in the record a finding of the facts by the Chancellor, and also an opinion by the Chancellor. We deem it unnec-

essary to set out all the facts, but the facts material to a determination of the questions made, are as follows:

Some time prior to September 5, 1924, James B. Hurt had been engaged in the cotton business in Memphis under the name of Flippin & Hurt, and the appellant, H. W. North, approached Hurt with the view of engaging in the cotton business with Hurt. Hurt advised North that he already had associated with him F. R. Christian and H. F. Parker, but expressed a willingness to have North become associated. North was a man of considerable wealth, and he understood that both Christian and Parker were men of limited means. He did not want to engage in a general partnership business whereby his entire wealth would be subject to the losses of the business. He first proposed the organization of a corporation, and then the limited partnership was suggested. This resulted in all the parties going to Mr. L. D. Bejach, attorney, and after advising with Mr. Bejach the four decided upon a limited partnership agreement, with H. W. North as the special or limited partner, and J. B. Hurt, F. R. Christian and H. F. Parker, as general partners. This limited partnership agreement was duly executed by the respective parties and duly recorded in the Register's Office of Shelby county. By the terms of this agreement it expired on August 31, 1925.

The third and fourth paragraphs of the original limited partnership agreement contained the material provisions with reference to the questions made on this appeal, and are as follows; together with a portion of the fifth item:

"Second: Said partnership shall commence as of the 1 day of September, 1924, and shall terminate at the close of business on the 31st day of August, 1925.

"Third: The capital with which said partnership shall commence business shall consist of the established business, including good will, formerly operating in Memphis, Tennessee, under the name and style of Flippin & Hurt, and now owned by the above-named J. B. Hurt, it being the purpose and intention that the partnership hereby formed shall operate as a successor to the said firm of Flippin & Hurt, together with such other contributions and individual property as shall from time to time be contributed to or loaned to the said partnership for its use and benefit by the other general partners, including especially such assets and property as shall be listed and scheduled by them from time to time. The contribution of the limited partner, H. W. North, shall consist of $40,000 in cash, paid into the said partnership hereby formed, upon which amount he shall be entitled to receive interest at the rate of six (6%) per cent per annum. Each of the general partners shall also be en-

titled to receive interest at the rate of 6% per annum upon such amounts as they shall from time to time contribute to or lend to said partnership for its use and benefit. Interest as aforesaid shall be paid to said limited partner and to the general partners before any distribution of profits shall be made among the said partners, *it being the purpose and intention of this agreement that the respective amounts aforesaid, and any additions hereto by any of the partners as the same may be made from time to time, unless otherwise expressly stipulated, shall, as between the partners and for all purposes of division of the profits and settlement of partnership affairs be treated as loans by said partners respectively.* (Italicizing ours.) Any partner may, with the assent of the others, increase his contribution, and thereby increase the amount upon which he shall receive interest but not thereby increase his share in the profits of the partnership.''

In the fifth item or paragraph, it is further provided:

''. . . . The said limited partner shall be entitled to fifteen (15%) per cent of the net profits of the business to be apportioned and divided at the end of the fiscal year, and he shall also bear fifteen (15%) per cent of the losses, if any, incurred by the said partnership; *but in no event shall he be liable for losses to any extent greater than fifteen per cent of such losses in addition to cash contributions hereinabove specified.*'' (Italicizing ours.)

There was also an agreement signed by the three general partners, J. B. Hurt, F. R. Christian and H. F. Parker, which in no way concerned North. It was provided in the agreement by the general partners in the first item as follows:

''First: The division of the profits of the business and losses of same, if any, shall be divided and apportioned between the general partners as follows:

''J. B. Hurt .......... 60%.

''F. R. Christian .......... 17½%.

''H. F. Parker .......... 7½%.

''The said scale of division of profits and losses, together with the provision of 15% as to the special partner, H. W. North, set out in the limited partnership agreement hereinabove referred to, shall, as between the parties hereto, constitute the entire and complete basis for division of profits and losses of said business.''

Some months subsequent to the date of the original limited partnership agreement, a supplemental limited partnership agreement was entered into between the parties, which was likewise duly executed and recorded, by the terms of which it was provided that the con-

tribution of the limited partner, North, was increased $25,000, in addition to the amount of the original contribution, making the total contribution of North $65,000 in place of $40,000. It was also provided that the percentage of profits and losses to North would be increased from fifteen per cent to twenty-five per cent. The original agreement in all other respects to remain.

There was also a supplemental agreement prepared for the general partners to sign, but which seems not to have been actually signed, but they seem to have acted upon it as though signed, and by which it was provided that Hurt would participate in the profit and losses on the basis of fifty per cent instead of sixty per cent as originally provided. This seems to have been agreed to because North had advanced an additional $25,000 and the percentage of loss and profits to North was increased ten per cent, and Hurt's was accordingly reduced from sixty per cent to fifty per cent. About this there seems to be no dispute.

As above stated, the limited partnership agreement terminated by express limitation at the close of business on August 31, 1925. However, the business was continued until some time in December, when Hurt died, and liquidation became necessary on account of the death of Hurt.

Considerable evidence was taken by depositions, but the only serious conflict in the evidence is with reference to the operation of the business after August 31, 1925, North contended, and so testified, that all of the partners agreed that the business would be continued after August 31, 1925, under the same limited partnership agreement. Christian testified that there was never any such agreement actually made between the partners. However, it appears that no change was made in the operation of the business from August 31, 1925, to the date of the death of Hurt in December following. The Chancellor held that there was no specific agreement among the partners to continue the business under the limited partnership contract after August 31, 1925, and that the limited partnership contract having terminated by express limitation on August 31, 1925, that from that date to the date of the death of Hurt, the partners were in law bound as general partners, not only as to creditors, but as among themselves. This holding of the Chancellor is made the basis of one of the assignments of error by appellant. This question will be later referred to.

It appears from a stipulation contained in the record that on December 13, 1925, the date of the death of J. B. Hurt, there was credited upon the books of the partnership of J. B. Hurt & Co., the total net sum of $150,341.97 in cash contributions or cash advances of the parties to the partnership; that the amount of said contribution or cash advances going to make up such total as of such date

were by the individual partners, respectively, H. W. North, $83,833.-18, J. B. Hurt, $62,033.52, F. R. Christian, $3,710.21, H. F. Parker, $765.06. It was further stipulated that the net sum realized in liquidation of J. B. Hurt & Co., and in the hands of H. W. North, after providing for payment for an account then outstanding, is $28,216.80. It is further stipulated that subsequent to December 13, 1925, F. R. Christian withdrew the sum of $3,425; and H. F. Parker withdrew the sum of $849.78, net; neither H. W. North nor J. B. Hurt nor the estate of J. B. Hurt withdrawing anything by way of periodical compensation, drawing account, or otherwise, during the period of liquidation of the partnership business. It was further stipulated that during the period of the fiscal year, the partnership made a profit duly charged and credited and thereafter in its operation and liquidation the firm and partnership sustained a total net loss in business of $122,125.17, all of which losses were incurred in the liquidation subsequent to December 12, 1925. The matters above stipulated rendered it unnecessary that a reference be made to the Master on those items, and the stipulation was entered into between counsel for the respective parties for that reason.

The deposition of L. D. Bejach was taken by the complainant for the purpose of explaining the understanding of the respective parties at the time the contract was prepared by him. The defendant, North, objected to this evidence, and predicated his objections upon two grounds, first, that L. D. Bejach was the attorney representing all the parties, and that his evidence was violative of the rule that an attorney will not be permitted to testify with reference to matters coming to his knowledge where he sustains the relation of attorney and client; and, second, because his evidence is violative of the rule that parol contemporaneous evidence is not admissible to alter, vary or change the provisions of a written contract. The Chancellor overruled these objections and admitted the evidence of Mr. Bejach on these matters, and this action of the Chancellor is also made the basis of an assignment of error by appellant. The complainant objected to the evidence of H. W. North which was offered as explaining his understanding of the limited partnership contract according to the discussions he had with Hurt and the other general partners. This evidence was objected to by complainant on the ground that it was violative of the statute whereby a party to a suit cannot testify to transactions and conversations had with a deceased in an action for or against the administrator of the deceased, and the exceptions were sustained by the Chancellor and the evidence of North on those matters was excluded, and to which action of the court, the defendant, North, excepted, and this ruling of the Chancellor on that evidence is also made the basis of an assignment of error by appellant. The question of the competency

of the evidence of Bejach admitted over the objection of the defendant, North, and the competency of the evidence of North excluded by the Chancellor, will be later referred to in this opinion.

The Chancellor also held that under the terms and provisions of the limited partnership contract, in the matter of the distribution of the assets, it would not be controlled by Chapter 120, Section 23, of the Public Acts of 1919, known as the Uniform Limited Partnership Law, for the reason that there was specific provision contained in the contract that the respective amounts contributed were to be treated as loans by the respective partners, and that the provisions with reference to limiting the liability of North to twenty-five per cent of the losses simply meant that he would not be liable for any losses in excess of twenty-five per cent of losses sustained and the amount of his contribution. This construction by the Chancellor of the limited partnership contract is also made the basis of an assignment of error by appellant. The Chancellor accordingly held that North and Hurt would be entitled to apportion the net amount of assets remaining after liquidation on the basis of their respective contributions, and that both Christian and Parker had already withdrawn more than their respective contributions, and, hence, not entitled to share in the division of the $28,216.80, and decreed accordingly. On this basis the Chancellor decreed that North was entitled to receive $15,734.07; and J. B. Hurt, or his estate, $11,642.-64; Christian $696.33; and Parker $143.76, but further held that because of certain withdrawals by Christian and Parker in excess of their interest in the remaining fund, that they were not entitled to share in the distribution, and that Christian was overdrawn in the sum of $2,641.06, and for which amount he is liable to H. W. North and Bank of Commerce & Trust Co., administrator of J. B. Hurt, respectively, in proportion to their respective interests in the $28,216.80 remaining for distribution, and that Parker had also overdrawn above the amount he was entitled to participate. The Chancellor further held that the remaining fund of $28,216.80 in the hands of H. W. North, ''all representing advances by the partners entitled to be treated as loans, is to be divided between H. W. North and Bank of Commerce & Trust Co., administrator, in the ratio of the relative cash contributions and advances of H. W. North and J. B. Hurt to the partnership of J. B. Hurt & Co., such contributions and advances of H. W. North and J. B. Hurt, being respectively, $83,833.18 and $62,033.52, and the respective interests of said parties in the said remaining fund of $28,216.80 being 57.4725%, and 42.5275%. That such remaining fund of $28,216.80 being 57.4725% and 42.5274%. That of such remaining fund of $28.216.80 H. W. North is entitled to the sum of $16,216.90; and Bank of Commerce & Trust Co., administrator of J. B. Hurt, is entitled to $11,999.90,

which has been wrongfully withheld from it by H. W. North; that said Bank of Commerce, administrator of J. B. Hurt, is entitled to a judgment against said H. W. North for the sum of $11,999.90, and interest thereon at the rate of 6% from September 28, 1927."

The Chancellor further held and decreed "that of the sum of $2641.06 due by the defendant F. R. Christian on account of his overdraft, said H. W. North is entitled to 57.4725% or $1517.88, and Bank of Commerce & Trust Co., administrator of J. B. Hurt, is entitled to 42.5275% or $1123.18; and said H. W. North and Bank of Commerce & Trust Co., administrator of J. B. Hurt, are entitled to have judgment against said F. R. Christian, respectively, . . ."

The Chancellor decreed a dismissal of the cross-bill of H. W. North, and taxed the defendant and cross-complainant H. W. North with all of the costs of the cause.

From this decree H. W. North has appealed to this court, assigning errors.

We deem it unnecessary to consider each of the several assignments of error separately. In the view of the case we have taken we deem it unnecessary to pass upon the competency of the evidence of Bejach and North, made the basis of certain of the assignments of error. However, we are inclined to concur in the holding of the Chancellor that the evidence of Bejach would not be violative of the rule of testifying to transactions between client and attorney. We are also inclined to hold with the Chancellor that parol evidence is admissible to reflect light and understanding on the intention of the parties to the contract, and their mutual interpretation of the same, where there is any ambiguity. We are also inclined to hold that the evidence offered by H. W. North with reference to the transactions, excepted to by complainant, and sustained by the Chancellor and the conversations with the deceased Hurt, would be incompetent under the statute on the subject of parties to a suit testifying to conversations and transactions with the deceased in an action by or against the administrator of the deceased. But we think that it is unimportant and not material to a proper determination of the rights of the parties that this evidence be considered as either competent or incompetent.

We are of the opinion that the limited partnership agreement terminated by express limitation on August 31, 1925, and that thereafter, in the absence of a recorded renewal of the same as required by the Uniform Limited Partnership Act, Chapter 120 of the Acts of 1919, the limited partner, North, would be liable to creditors as a general partner. However, where the parties continue to operate the business without any change in their respective relations under the limited partnership contract, even though there is no express

agreement that the business be so continued, yet, where the parties apparently by tacit consent, so continue the business, that their respective rights would be controlled by the articles of co-partnership, and as between the partners the limited partnership contract would control. In this view of the case we think it immaterial whether there was an express or specific agreement between the parties that the contract would continue in force as between them, where the business is actually conducted in the same way and manner as prior to August 31, 1925.

The question then remains as to the rights of the parties, North, and the Bank 'of Commerce, as administrator of Hurt, and whether their respective rights in the $28,216.80 remaining after liquidating, shall be divided or apportioned under the provisions of Section 23 of the Uniform Limited Partnership Law, Chapter 120 of the Acts of 1919.

Section 23 of Chapter 120 of the Acts of 1919, makes specific provision as follows:

"Section 23. Be it further enacted, That (Distribution of assets).

"(1) In settling accounts after dissolution the liabilities of the partnership shall be entitled to payment in the following order:

"(a) Those to creditors, in order of priority as provided by law, except those to limited partners on account of their contributions and to general partners.

"(b) Those to limited partners in respect to their share of the profits and other compensation by way of income on their contributions.

"(c) Those to limited partners in respect to the capital of their contributions.

"(d) Those to general partners other than for capital and profits.

"(e) Those to general partners in respect to profits.

"(f) Those to general partners in respect to capital.

"(2) Subject to any statement in the certificate or to subsequent agreement, limited partners share in the partnership assets in respect to their claims for capital, and in respect to their claims for profits or for compensation by way of income or their contributions respectively, in ·proportion to the respective amounts of such claims."

It will thus be seen that in the absence of any specific provision in the contract with reference to the liability of the limited partners, and in the absence of any provision in the limited partnership agreement creating a different basis for the distribution of assets, or the liability of the partnership to the limited partner, that by sub-

sections (b) and (c) the limited partner takes priority in the distribution.

It is the contention of appellant that there are no provisions or conditions stipulated in the articles of the limited partnership agreement which in legal effect changes the order of distribution from that provided by Section 23 of the Uniform Limited Partnership Act, and that the learned Chancellor was in error in holding and decreeing that the claim of North was not entitled to priority over the other partners, who were general partners. It being further contended that by specific provision in the articles of limited copartnership, the liability for losses by North was limited to twenty-five per cent, and that any losses sustained by the partnership in excess of the twenty-five per cent would be the liability of the general partners, and the general partners, should therefore sustain seventy-five per cent of the net losses.

It is the contention of appellee that the limited partnership agreement does not limit the amount of loss to be sustained by North, as the limited partner, to twenty-five per cent of the losses, but that it is also provided that his losses shall not exceed twenty-five per cent in addition to the amount advanced or contributed or loaned by him to the partnership; and that by specific provision he contracted to hazard in the business the loss of his contribution invested, the profits, and also twenty-five per cent of the losses which the business may sustain. In order to determine the merits of the respective contentions it is necessary to construe the third paragraph or item of the limited partnership, agreement. For this purpose we advert to the language used in paragraph 3 hereinbefore quoted and italicized, and in which the purpose and intention of the parties is expressed in specific language, wherein it is provided, "that the respective amounts, aforesaid, and any additions hereto by any of the partners as the same may be made from time to time, unless otherwise expressly stipulated, shall, as between the partners and for all purposes of division of the profits and settlement of partnership affairs be treated as loans by said partners, respectively." We then look to the limited partnership agreement to see if there is any express stipulation contained in the instrument that would entitle such contributions, as between the partners "and for all purposes of division of the profits and settlement of partnership affairs," to be treated other than as loans by the respective partners. The only other provision on the subject is that portion of item or paragraph 5 in the agreement, wherein it is specifically provided: "The said limited partner shall be entitled to fifteen per cent (subsequently increased to twenty-five per cent) of the net profits of the business to be apportioned and divided at the end of the fiscal year and he shall also bear fifteen per cent (twenty-five per cent), of the losses,

if any, incurred by the said partnership; but in no event shall he be liable for losses to any extent greater than fifteen per cent (now twenty-five per cent), of such losses, in addition to cash contributions hereinabove specified.''

Taking these provisions of the contract and construing the same together, we do not find that there is any express stipulation contained therein that would alter the character of the contributions made by the respective parties, so that the same would be treated other than as loans, and upon which the respective partners would receive interest at the rate of six per cent per annum.

The conclusion we reach is that this language in the articles of limited co-partnership controls on the question of the distribution of the assets as between the partners, rather than the provisions of the Limited Partnership Act, Chapter 120, Section 23, of the Acts of 1919.

We are further of the opinion that the Uniform Limited Partnership Act is primarily intended to fix the liability of a limited partner to the creditors, and when by proper provision in the articles of limited co-partnership the purposes of the act have been met, that even the limited partner may contract with the general partners with reference to the matter of the settlement of the partnership affairs, as among all the partners. We are further of the opinion that the intention of the parties is clearly expressed in the articles of limited co-partnership, and that when it is construed as a whole, it reflects an intention that as to any remaining assets upon the liquidation or dissolution of the partnership, the remaining assets will be distributed in the ratio of the respective contributions of the respective partners, each to be treated as loans by the respective partners.

In this view of the case we are of the opinion that the result reached by the Chancellor, by which the division was apportioned on the pro rata basis of the respective contributions between North and Hurt, is proper. The decree of the Chancellor is accordingly affirmed.

Appellant and sureties on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.